|  |  |
|---|---|
| JACQUELIN OLSON, JEAN KNUTSON and, RAFAEL CAJIGAS, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | Case No.: 18-cv-793 **CLASS ACTION COMPLAINT** |
| Plaintiff, ) | |
| vs. ) | **Jury Trial Demanded** |
| MESSERLI & KRAMER, P.A., JEFFERSON CAPITAL SYSTEMS LLC, and LVNV FUNDING LLC. ) ) ) ) | |
| Defendant. ) | |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

### *Plaintiffs*

3.     Plaintiff Jacquelin Olson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff Jean Knutson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.     Plaintiff Rafael Cajigas is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect a debt allegedly incurred for personal, family or household purposes.

7. Each plaintiff is also a "customer" as defined in the Wisconsin Consumer Act in that the debt Defendant sought to collect arose from a consumer transaction with an agreement or a series of agreements to defer payment. Wis. Stat. § 421.301(17).

*Defendants*

8. Defendant Messerli & Kramer, PA ("Messerli") is a law firm with its principal place of business located at 100 S. 5th Street, 1400 Fifth Street Towers, Minneapolis, MN 55402-5540.

9. Messerli is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10. Messerli is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

11. Messerli is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

12. Defendant Jefferson Capital Systems, LLC ("JCS") is a foreign limited liability company and debt collection agency with its principal place of business located at 16 McLeland Road, St. Cloud, Minnesota 56303.

13. Defendant LVNV Funding, LLC ("LVNV") is a foreign limited liability company with its principal place of business located at 15 South Main St., Greenville, South Carolina 29601.

14. JCS and LVNV are engaged in the business of collecting debts, both owed to others and acquired after default, and incurred for personal, family or household purposes.

2

15.     The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

16.     The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 189994, at *24-30 (M.D. Pa. Nov. 16, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697, at *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Sols.*, 2017 U.S. Dist. LEXIS 197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *McMahon v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 41984, at *32-38 (N.D. Ill. Mar. 14, 2018); *Torres v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 49885, at *12-15 (Mar. 27, 2018).

17.     The primary purpose of JCS's business, and JCS's principal purpose, is the collection of consumer debts. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose

3

in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

18.     JCS's website contains an "About Us" webpage, which states:

> Jefferson Capital is an industry-leading provider of traditional and unique recovery services for consumer charged-off accounts. Our clients include creditors and national debt buyers. We offer services such as a Payment Rewards Collections Program, purchasing and servicing of secured and unsecured bankruptcies, as well as traditional purchasing of distressed portfolios.

http://www.jeffersoncapitalinternational.com/us/about-jefferson-capital.html     (accessed March 15, 2018).

19.     In addition to telephone and mail-based debt collection activities, JCS is a frequent litigant in Wisconsin courts. A general search on Wisconsin Circuit Court Access ("CCAP") for "Jefferson Capital*" returns the error message: "Your request could not be processed. Your search has returned more than 5000 rows. Please try again."

20.     CCAP shows that JCS *filed* 73 civil and small claims actions in Milwaukee County in February 2018 alone.  Upon information and belief, virtually all or actually all of those cases are collection actions against Wisconsin consumers.

21.     JCS is a debt collector as defined in 15 U.S.C. § 1692a.

22.     Likewise, the primary purpose of LVNV's business, and LVNV's principal purpose, is the collection of consumer debts. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

4

23.     In *Mitchell* and *McMahon*, the Northern District of Indiana and the Northern District of Illinois, respectively, denied the plaintiffs' and LVNV's cross motions for summary judgment on the issue of whether LVNV was a debt collector, as defined in the FDCPA, holding that determination of LVNV's principal purpose is a factual issue that must be left for the jury. *Mitchell*, 2017 U.S. Dist. LEXIS 206440, at *19; *McMahon*, 2018 U.S. Dist. LEXIS 41984, at *32-38.

24.     In *Torres*, the Northern District of Illinois granted the plaintiff's motion for summary judgment on the issue of whether LVNV was a debt collector, as defined in the FDCPA, holding that LVNV was a debt collector because its only business purpose is to purchase debts and the collect them, it holds an Illinois collection agency license, it pursued collection of the outstanding debt by having its "master servicing agent" place the account with servicers, and its own deposition witness admitted that the only service LVNV provides is as a debt owner. *Torres*, 2018 U.S. Dist. LEXIS 49885, at *14-15.

25.     LVNV's website states:

> LVNV Funding LLC, ("LVNV") purchases portfolios of both domestic (U.S.) and international consumer debt owned by credit grantors including banks and finance companies, and by other debt buyers. As the new owner of any debt previously owned by another creditor, LVNV's name may appear on a customer's credit report or in a letter from a collection agency.

http://www.lvnvfunding.com/ (accessed March 15, 2018).

26.     In addition to telephone and mail-based debt collection activities, LVNV is a frequent litigant in Wisconsin courts. A general search on Wisconsin Circuit Court Access ("CCAP") for "LVNV*" returns the error message: "Your request could not be processed. Your search has returned more than 5000 rows. Please try again."

5

27.     CCAP shows that LVNV *filed* approximately 91 civil and small claims actions in Milwaukee County in February 2018 alone.   Upon information and belief, virtually all or actually all of those cases are collection actions against Wisconsin consumers.

28.     LVNV is a debt collector as defined in 15 U.S.C. § 1692a.

29.     JCS and LVNV are also debt collectors under Wisconsin law.

30.     Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

31.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

32.     JCS and LVNV are both a "merchant" as defined in the WCA, as they have, or claim to have, taken assignment of former consumer credit card accounts.   Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

33.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

34.     The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

6

Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

35.     JCS and LVNV use both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in their respective collection businesses.

36.     A company meeting the definition of a "debt collector" (here, JCS and LVNV) is vicariously liable for the actions of a second company (here, Messerli) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

37.     JCS and LVNV are debt collectors as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Relating to Plaintiff Olson*

38.     On or about September 23, 2016, Fingerhut mailed a debt collection letter to Olson, regarding an alleged debt, allegedly owed to Fingerhut.  A copy of this letter is attached to this Complaint as Exhibit A.

39.     Upon information and belief, the alleged debt referenced in Exhibit A is an alleged open-end Fingerhut credit account, used only for personal, family or household purposes. *See* https://www.fingerhut.com/content/FHTCreditTC/ (accessed March 15, 2018).

40.     Exhibit A contains the following:

7

Account Balance:          $5,567.43

Re: WebBank / Fingerhut Credit
Account # ending in 5871

Exhibit A.

    41.    <u>Exhibit A</u> also contains the following:

**Please call us now at 1-800-503-2462 to discuss payment options. Unless you make a payment, your account may be charged off as a bad debt and reported as such to the credit bureaus. Your account may also be placed with or sold to a third-party collection agency.**

Exhibit A.

    42.    <u>Exhibit A</u> also contains the following:

The Fingerhut Credit Account is issued by WebBank, Salt Lake City, Utah.

Exhibit A.

    43.    <u>Exhibit A</u> states that Olson's Fingerhut account was issued by Webbank, and had an account number ending in 5871.

    44.    <u>Exhibit A</u> also states that, as of September 23, 2016, Olson's delinquent Fingerhut account had a balance of $5,567.43, and would charge off unless Olson made a payment.

    45.    On or about November 9, 2016, non-party Alpha Recovery Corp. ("ARC") mailed a debt collection letter to Olson, regarding an alleged debt, allegedly owed to JCS and allegedly originally owed to Fingerhut.  A copy of this letter is attached to this Complaint as <u>Exhibit B</u>.

    46.    <u>Exhibit B</u> contains the following:

| Account Summary | |
|---|---|
| **Creditor:** JEFFERSON CAPITAL SYSTEMS, LLC. | |
| **Account Number:** ▇9183 | |
| **Debt Description:** FINGERHUT DIRECT MRKTING | |
| **Current Balance Claimed Due:** $5,567.43 | |

8

Exhibit B.

47.     Exhibit B also contains the following:

Your above referenced FINGERHUT DIRECT MRKTING account issued by WebBank has been sold by Bluestem Brands, Inc. to Jefferson Capital Systems, LLC. Bluestem Brands, Inc. previously acquired the account from WebBank.

Exhibit B.

48.     Exhibit B states that, as of November 9, 2016, the amount of the alleged debt that Olson allegedly owed to JCS was $5,567.43.

49.     Exhibit B also states that the account was issued by WebBank but had been transferred from WebBank to Bluestem Brands, Inc. before it was purchased by Jefferson Capital.  Exhibit B further states that the account number had changed to one ending in 9183.

50.     On or about July 13, 2017, Messerli mailed a debt collection letter to Olson, regarding an alleged debt, allegedly owed to "JEFFERSON CAPITAL SYSTEMS LLC as successor in interest to Metabank."  A copy of this letter is attached to this Complaint as Exhibit C.

51.     Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Olson inserted by computer.

52.     Upon information and belief, Exhibit C was the first written communication that Messerli sent to Olson regarding the alleged debt identified in Exhibit C.

53.     Exhibit C contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the debtor along with, or within five days of, the initial communication:

9

**IMPORTANT NOTICE CONCERNING YOUR RIGHTS**

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you notify us within 30 days after receipt of this letter that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid. If you notify us in writing within thirty days after receipt of this notice that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and mail a copy of such verification or judgment to you. Also, upon your written request·within 30 days after receipt of this letter, we will provide you with the name and address of the original creditor if different from the current creditor.

Exhibit C.

54.     Exhibit C also contains the following:

Date: July 13, 2017
Our Client: Jefferson Capital Systems, LLC as successor in
interest to Metabank
Consumer: Jacquelin Olson
Balance: $5,776.98
Our File Number: 17-█████200
Account Number: XXXXXXXXXXXX5871

Exhibit C.

55.     Exhibit C states that, as of July 13, 2017, the alleged debt that Messerli was attempting to collect from Olson was owed to JCS, had a balance of $5,776.98, and was associated with an account number ending in 5871.

56.     The unsophisticated consumer would understand Exhibit C to be stating that Olson's account with JCS had an account number ending in 5871 when, upon information and belief, the Jefferson Capital account number actually ended in 9183 or some other number.

57.     Instead, the account number stated in Exhibit C was associated with Olson's account number with the original creditor.

58.     The unsophisticated consumer, seeing a debt collector attempting to collect an account number associated with the original creditor would wonder whether there had been a sham debt sale and the original creditor still owned the debt.

59.     The unsophisticated consumer, upon receiving Exhibit C, would be confused about the identity of the creditor to whom the debt was owed.

10

60.     The confusion would be exacerbated because Exhibit C refers to JCS as "successor in interest to Metabank" even though Plaintiff's account was actually issued by Webbank, and had been transferred to Bluestem Brands, Inc. prior to being sold to JCS.  *See* Exhibit B.

61.     Upon information and belief, no entity named "Metabank" had ever owned Olson's account.

62.     No entity named "Metabank" had ever communicated with Olson using the name "Metabank."

63.     The confusion is further exacerbated because the balance did not change between the time Fingerhut mailed Exhibit A, on or about September 23, 2016, and the time ARC mailed Exhibit B, on or about November 9, 2016, but had mysteriously increased more than $200 by the time Messerli mailed Exhibit C, on or about July 13, 2017.

64.     Exhibit C does not provide any explanation for why the balance increased more than $200 even though Exhibit B implies to the consumer that the account was no longer accruing interest or other charges.

65.     Upon information and belief, Messerli was attempting to collect interest on Plaintiff's account, and had back calculated interest to the time the account was sold.

66.     Exhibit C does not disclose that the account was continuing to accrue interest, nor does Exhibit C state that the amount of the debt that Messerli was attempting to collect may have increased by the time the consumer received the letter.  *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC*, 214 F.3d 872, 875-76 (7th Cir. 2000); *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 949 (7th Cir. 2004); *Spuhler v. State Collection Servs.*, 2017 U.S. Dist. LEXIS 210895, at *18-19 (E.D. Wis. Dec. 22, 2017) ("Because this is a case where State

11

Collection is attempting to collect both the listed balance plus the interest running on it, State Collection was required to use the safe harbor language of *Miller*.") (citing *Chuway*, 362 F.3d at 949); *see also, Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76-77 (2d Cir. 2016) (debt collector violated FDCPA by stating the "current balance" without providing notice that the amount is increasing due to accruing interest or other charges).

67.     <u>Exhibit C</u> is false, deceptive, misleading, and confusing as to the name of the original and current creditors, and the amount, character, and legal status of the debt that Messerli is attempting to collect.

68.     Olson was deceived, misled, and confused by <u>Exhibit C</u>.

69.     The unsophisticated consumer would be deceived, misled, and confused by <u>Exhibit C</u>.

### *Facts Relating to Plaintiff Cajigas*

70.      On or about September 7, 2017, LVNV, by its attorneys (Messerli), filed a collection action against Cajigas in the small claims division of the Milwaukee County Circuit Court, attempting to collect an alleged debt originally owed to Credit One Bank, N.A. and associated with an account number ending in 5531.  The Milwaukee County Case No. was 17-sc-29454.

71.     The alleged debt Messerli and LVNV were attempting to collect with this small claims suit was a personal consumer credit card account, incurred for personal, family, or household purposes.

72.     On October 4, 2017, the Court entered a default judgment in LVNV's favor.

12

73.     On October 17, 2017, the default judgment was entered and docketed in the amount of $827.37.  A copy of the Notice of Entry of Judgment in Milwaukee County Case No. 17-sc-29454 is attached to this complaint as Exhibit D.

74.     Exhibit D contains the following:

**IT IS ORDERED:**
Judgment for **Money** was entered into the court record on October 4, 2017.

| **In favor of** [Creditor]: | **Creditor's attorney:** |
|---|---|
| LVNV Funding LLC c/o Messerli & Kramer PA | Jillian N Walker |
| 3033 Campus Drive Suite 250 | Messerli & Kramer |
| Plymouth MN  55441 | 3033 Campus Drive, Ste 250 |
| | Plymouth MN  55441 |

| **Against** [Debtor]: | **Debtor's attorney:** |
|---|---|
| Rafael Cajigas | |
| 4215 S VERMONT CT APT 20 | |
| SAINT FRANCIS WI  53235-5430 | |

| Amount of Judgment: | $ 732.37 | Comments: |
|---|---|---|
| Interest: | 0.00 | |
| Attorney Fee: | 50.00 | |
| Filing Fees: | 0.00 | |
| Service Fees: | 40.00 | |
| Docketing Fee: | 5.00 | |
| Witness Fee: | 0.00 | |
| Pre-Judgment Interest: | 0.00 | |
| Other costs: | 0.00 | |
| **Total Money Judgment:** | **$ 827.37** | |

Docketing Date: 10-17-2017

Date notice mailed: 10-17-2017

Docketing Time: 11:52 am

Exhibit D.

75.     On or about October 27, 2017, Messerli mailed a debt collection to Cajigas regarding an alleged debt owed to LVNV, which was associated with "Court File Number 17SC29454" and a Messerli account number ending in 953.  A copy of this letter is attached to this complaint as Exhibit E.

76.     Upon information and belief, Exhibit E is a form letter, generated by computer and with the information specific to Cajigas inserted by computer.

77.     Upon information and belief, Exhibit E is a form debt collection letter, used by Messerli and LVNV to attempt to collect alleged debts.

78.     Exhibit E contains the following:

13

Date: October 27, 2017
Our Client: LVNV Funding LLC as successor in interest to
Credit One Bank, N.A.
Consumer: Rafael Cajigas
Account Number: XXXXXXXXXXXX5531
Balance: $824.55
Our File Number: 17-■953
Court File Number: 17SC29454

Exhibit E.

79.     Exhibit E, mailed on October 27, 2017, ten days after judgment was entered and docketed in the amount of $827.37, states that the "Balance" of the debt is $824.55.

80.     Exhibit E provides no explanation for how, or why, the amount of the debt would have decreased between October 17, 2017, when the judgment was entered and docketed, and October 27, 2017, when Exhibit E was mailed.

81.     Moreover, although the debt in question had been reduced to judgment and, upon information and belief, Messerli was attempting to collect post-judgment interest, which was accruing when Exhibit E was mailed, Exhibit E does not disclose that interest was accruing on the account.  *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC*, 214 F.3d 872, 875-76 (7th Cir. 2000); *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 949 (7th Cir. 2004); *Spuhler v. State Collection Servs.*, 2017 U.S. Dist. LEXIS 210895, at *18-19 (E.D. Wis. Dec. 22, 2017) ("Because this is a case where State Collection is attempting to collect both the listed balance plus the interest running on it, State Collection was required to use the safe harbor language of *Miller*.") (citing *Chuway*, 362 F.3d at 949); *see also, Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76-77 (2d Cir. 2016) (debt collector violated FDCPA by stating the "current balance" without providing notice that the amount is increasing due to accruing interest or other charges).

82.     Exhibit E represents the amount, character, and legal status of the debt Messerli was attempting to collect in a false, deceptive, misleading, and confusing manner.

83.     On or about January 23, 2018, Messerli mailed a debt collection to Cajigas regarding the same alleged debt owed to LVNV. and associated with a Messerli account number ending in 953.  A copy of this letter is attached to this complaint as Exhibit F.

84.     Upon information and belief, Exhibit F is a form letter, generated by computer and with the information specific to Cajigas inserted by computer.

85.     Upon information and belief, Exhibit F is a form debt collection letter, used by Messerli and LVNV to attempt to collect alleged debts.

86.     Exhibit F contains the following:

Date: January 23, 2018
Our Client: LVNV Funding LLC
Original Creditor: Credit One Bank, N.A.
Consumer: Rafael Cajigas
Balance: $839.00
Our File Number: 17-███953
Account Number: XXXXXXXXXXXX5531

Exhibit F.

87.     Exhibit F states that the balance of the account has increased since Exhibit E was mailed.  Upon information and belief, the balance has increased because Messerli is attempting to collect post-judgment interest.

88.     Exhibit F also contains the following settlement offers:

*   Option 1: 1 payment of $754.72 due in our office no later than 02/28/2018.

*   Option 2: 2 payments of $385.75 (Totaling $771.50) with each payment due in our office no later than the 28th of each month for 2 consecutive months. The first payment would be due in our office no later than 02/28/2018.

*   Option 3: 3 payments of $265.55 (Totaling $796.65) with each payment due in our office no later than the 28th of each month for 3 consecutive months. The first payment would be due in our office no later than 02/28/2018.

Exhibit F.

15

89. <u>Exhibit F</u> purports to offer settling the debt for a portion of the balance due---in the case of the lump sum, approximately 90% of the outstanding balance stated in <u>Exhibit F</u>.

90. The settlement offers in <u>Exhibit F</u> false states or implies that the settlement offer is valid only if the first payment is received in Messerli's office on or before February 28, 2018.

91. Upon information and belief, Messerli had authority from LVNV to settle consumers' accounts pursuant to the lump sum offer stated in <u>Exhibit F</u> for 90% of the amount owed, or less, at any time.

92. Upon information and belief, pursuant to its collection agreement with LVNV, Messerli was obligated to settle consumers' accounts pursuant to the lump sum offer stated in <u>Exhibit F</u> for 90% of the amount owed, or less, at any time.

93. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

94. Such false statements are material false statements, as they impart in the unsophisticated consumer, a false believe that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

95. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters purporting to contain an expiration date certain:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

16

96.     Messerli did not use the safe harbor language in Exhibit F.

97.     Upon information and belief, the deadline in Exhibit F to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

98.     Cajigas was confused and misled by Exhibits E and F.

99.     The unsophisticated consumer would be confused by Exhibits E and F.

### *Facts Relating to Plaintiff Knutson*

100.    On or about July 26, 2017, Messerli mailed Knutson's attorneys a debt collection letter regarding an alleged debt that Knutson allegedly owed to LVNV "as successor in interest to HSBC Bank Nevada, N.A." A copy of this letter is attached to this complaint as Exhibit G.

101.    Upon information and belief, the debt referenced in Exhibit G is a consumer credit card account, which was obtained and used for personal, family, or household purposes.

102.    Upon information and belief, Exhibit G is a form letter, generated by computer and with the information specific to Knutson inserted by computer.

103.    Upon information and belief, Exhibit G is a form debt collection letter, used by Messerli and LVNV to attempt to collect alleged debts.

104.    Upon information and belief, Exhibit G was the first written communication Messerli mailed Knutson or her attorneys regarding the alleged debt referenced in Exhibit G.

105.    Exhibit G contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector send the alleged debtor along with, or within five days of, the initial communication:

**IMPORTANT NOTICE CONCERNING YOUR RIGHTS**

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you notify us within 30 days after receipt of this letter that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid. If you notify us in writing within thirty days after receipt of this notice that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and mail a copy of such verification or judgment to you. Also, upon your written request within 30 days after receipt of this letter, we will provide you with the name and address of the original creditor if different from the current creditor.

Exhibit G.

106.    Exhibit G is false, deceptive, misleading, and confusing to the competent attorney.

107.    Exhibit G states that Messerli's "client" is LVNV "as successor in interest to HSBC Bank Nevada, N.A." ("HSBC").

108.    The representation that Messerli is acting on behalf of "LVNV Funding LLC as successor in interest to HSBC," is false, deceptive, misleading, and confusing to the competent attorney because it represents that the debt Messerli is attempting to collect is stale and is likely past the statute of limitations.

109.     HSBC sold its portfolio of consumer credit cards to Capital One in 2011.  *See* https://www.theguardian.com/business/2011/aug/10/hsbc-sells-us-credit-card-business-to-capitalone (accessed March 26, 2018).  HSBC has had no interest in Plaintiff's account or any U.S. consumer credit card accounts since 2011.

110.    In Wisconsin, the statute of limitations on open accounts, including credit cards, is six years.  Wis. Stat. § 893.43.  If LVNV actually purchased this account from HSBC, assuming the debt was not reduced to judgment, it would be past the statute of limitations.

111.    Neither LVNV nor HSBC sued Knutson for this debt.  The debt has not been reduced to judgment.

112.    In fact, the alleged debt is not past the statute of limitations, and LVNV is not acting as "successor in interest to HSBC."  Upon information and belief, LVNV purchased the

alleged debt at issue from Capital One, not HSBC. On or about April 15, 2017, Capital One mailed a "Notice of Assignment" letter to Knutson regarding this alleged debt. A copy of this letter is attached to this complaint as Exhibit H.

113. The representation that Messerli is acting on behalf of LVNV as successor in interest to HSBC is a false, deceptive, misleading, and confusing to the competent attorney, who would be deceived and misled by Exhibit H, and would assume that the alleged debt Messerli was attempting to collect was illegitimate, and would consequently de-prioritize that debt even though Messerli is a law firm that does, in fact, file collection lawsuits. *See Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 748 (E.D. Mich. July 12, 2017) ("An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives.") (quoting *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1097 (6th Cir. 2015), *rev'd on other grounds*, *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)); *Lox v. CDA, Ltd.*, 689 F.3d 818, 827 (7th Cir. 2012) ("Whether or not this fact would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process[.]").

### The FDCPA

114. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist.

LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill.

20

July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

115. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

116. 15 U.S.C. § 1692e provides, in relevant part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

117. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

21

118.    15 U.S.C. § 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

119.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

120.    15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

121.    15 U.S.C. § 1692g(a)(2) requires that the debt collector must state the name of the creditor to whom the debt is owed in a non-confusing manner. *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d at 325.

### *The WCA*

122.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

123.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations omitted).

124.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

125.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and

22

sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

126.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

127.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

128.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

129.    Wis. Stat. § 427.104(1)(e) prohibits debt collectors from disclosing a customer's information affecting the customer's reputation, whether or not for credit worthiness, where the person does not have a legitimate business need for the information.

130.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

131.   Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

132.   Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

133.   Wis. Stat. § 427.104(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I -- FDCPA

134.   Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

135.   Count I is brought on behalf of Plaintiff Olson and against Messerli and JCS.

136.   Exhibit C misstates the account number associated with the debt.

137.   Exhibit C states the amount of the debt in a deceptive and confusing manner.

138.   Exhibit C also falsely identifies the previous creditor as "Metabank," even though Plaintiff's account was actually issued by Webbank, and had been transferred to Bluestem Brands, Inc. prior to being sold to JCS, and no entity named "Metabank" had ever owned Olson's account or communicated with Olson using the name "Metabank." *See* Exhibit B.

139.   Exhibit C's statement of the original creditor's account number and false identification of the previous creditor renders Exhibit C confusing as to the name of the creditor.

140.   The unsophisticated consumer would be confused and misled as to the name of the creditor to whom the debt is owed.

141.   The unsophisticated consumer would be confused and misled as to the character of the debt.

142.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), 1692g(a)(1), and 1692g(a)(2).

## COUNT II -- FDCPA

143.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

144.     Count II is brought on behalf of Cajigas and against Messerli and LVNV.

145.     Exhibit E understates the debt and fails to disclose that the debt is accruing post-judgment interest.

146.     Exhibit E provides no explanation for how, or why, the amount of the debt would have decreased between October 17, 2017, when the judgment was entered and docketed, and October 27, 2017, when Exhibit E was mailed.

147.     Exhibit E does not disclose that interest was accruing on the account, even though it was accruing.

148.     Exhibit E represents the amount, character, and legal status of the debt Messerli was attempting to collect in a false, deceptive, misleading, and confusing manner.

149.     The unsophisticated consumer would be confused and misled as to the amount and character of the debt.

150.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f.

## COUNT III -- FDCPA

151.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

152.     Count III is brought on behalf of Cajigas and against Messerli and LVNV.

153.     Exhibit F falsely states that the settlement offer is for a limited time only.

25

154. Upon information and belief, the creditor and/or Defendant would settle Cajigas's debt at the offered discount, and possibly for less, at any time, regardless of the supposed deadline.

155. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f.

## COUNT IV -- FDCPA

156. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

157. Count IV is brought on behalf of Knutson and against Messerli and LVNV.

158. Exhibit G falsely states that Messerli is acting on behalf of LVNV as successor in interest to HSBC.

159. In fact, Messerli is acting on behalf of LVNV as successor in interest to Capital One.

160. The false statement as to the name of the creditor from whom LVNV purchased the debt is material because it implies to the competent attorney that the debt at issue is time-barred.

161. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f.

## COUNT V -- WCA

162. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

163. Count V is brought on behalf of Olson and against Messerli and JCS.

164. Exhibit C represents the amount of the debt in a confusing and misleading manner.

165. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT VI -- WCA

166. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

167. Count VI is brought on behalf of Cajigas and against Messerli and LVNV.

168. Exhibit E misstates the amount of the debt and fails to represents the amount of the debt in a false, deceptive, and confusing manner.

169. Exhibit F falsely states that the settlement offer is available for a limited time when, upon information and belief, it would be available to Cajigas at any time.

170. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT VII -- WCA

171. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

172. Count VII is brought on behalf of Knutson and against Messerli and LVNV.

173. Exhibit G falsely represents that Messerli and LVNV are attempting to collect a time-barred debt, which is confusing and misleading to the competent attorney.

174. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

175. Plaintiff brings this action on behalf of three Classes.

176. Class I ("Fingerhut Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form(s) represented by Exhibit C to the

27

complaint in this action, (c) seeking to collect a debt incurred for personal, family or household purposes, (d) owed to Jefferson Capital, (e) in which 5% annual interest was added to the debt retroactively to the date on which JCS purchased the debt, even though another debt collector did not attempt to collect interest after the debt was purchased (f) where the letter in the form of Exhibit C was mailed between May 23, 2017 and May 23, 2018, inclusive, (h) and was not returned by the postal service. Plaintiff Olson is the named representative of Class I.

177. Class II ("Settlement Date Certain Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form(s) represented by Exhibit F to the complaint in this action, (c) seeking to collect a debt owed to LVNV and incurred for personal, family or household purposes, (d) between the dates of May 23, 2017 and May 23, 2018, inclusive, (e) that was not returned by the postal service. Plaintiff Cajigas is the named representative of Class II.

178. Class III ("False Original Creditor Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form of Exhibit G, (c) seeking to collect a debt owed to LVNV and incurred for personal, family or household purposes, (d) where the letter in the form of Exhibit G identified LVNV as being successor in interest to HSBC, (e) and was mailed between May 23, 2017 and May 23, 2018, inclusive, (f) and was not returned by the postal service. Plaintiff Knutson is the named representative of Class III.

179. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

180. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA or the WCA.

181.     Plaintiffs' claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

182.     Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

183.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

184.     Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  May 23, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
     John D. Blythin (SBN 1046105)
     Mark A. Eldridge (SBN 1089944)
     Jesse Fruchter (SBN 1097673)
     Ben J. Slatky (SBN 1106892)
     3620 East Layton Avenue
     Cudahy, WI 53110
     (414) 482-8000
     (414) 482-8001 (fax)
     jblythin@ademilaw.com
     meldridge@ademilaw.com
     jfruchter@ademilaw.com
     bslatky@ademilaw.com